UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                              Case No.  01-20348-608

VANDERVEER ESTATES HOLDING, LLC,                                    Chapter 11

                         Debtor.
-------------------------------------------------------------x
AMERICAN SAFETY INDEMNITY COMPANY,                                  Adv. Proc. No.  04-1202-608

                         Plaintiff,

       -against-

VANDERVEER ESTATES HOLDING, LLC;
VANDERVEER REALTY GROUP, INC.; ASHA
GREENIDGE, as mother of infant JAHNIYA
McLENNAN and ASHA GREENDIDGE,
Individually; ADINA BABB; JAQUELINE
PINEDA; MARIE SOLON; and CHANEL
POITIER, as Administratrix of the Estate of
GERARD POITIER; FOSTER APARTMENT
GROUP, LP and ABRAHAM WEIDER

                       Defendants.
-------------------------------------------------------------x

## DECISION

APPEARANCES:

| | |
|---|---|
| Martin Bunin, Esq. | Mark L. Antin, Esq. |
| Peter Marchetti, Esq. | William E. Marsala, Esq. |
| Thelen Reid & Priest | Gennet Kallmann Antin & Robinson PC |
| 875 Third Avenue | 45 Broadway Atrium Litman Suite |
| New York, New York 10022 | New York, New York 10006 |
| Attorneys for the Official Committee of Unsecured Creditors | Attorneys for the Plaintiff |

CARLA E. CRAIG
United States Bankruptcy Judge

1

This matter comes before this Court on the motion of the Official Committee of Unsecured Creditors (the "Committee") of Vanderveer Estates Holding, LLC (the "Debtor" or "Vanderveer"), seeking summary judgment in this adversary proceeding. Plaintiff American Safety Indemnity Company ("ASIC") has filed a cross-motion for summary judgment.

On April 13, 2004, the Committee removed this action, then pending in Supreme Court, Kings County, to this Court. This action was brought by ASIC seeking a declaratory judgment that ASIC has no obligation to defend or indemnify Vanderveer pursuant to an insurance contract, dated December 29, 2000, between ASIC and Vanderveer (the "Insurance Policy") because Vanderveer breached its obligations under the Insurance Policy by failing to pay the self-insured retention of $25,000 per claim reserved to Vanderveer thereunder.

On December 22, 2004, the Committee moved for summary judgment, seeking a determination that ASIC must provide coverage to the plaintiffs in certain personal injury actions currently pending against Vanderveer, to the extent that the claims exceed the Debtor's self-insured retention under the Insurance Policy. On January 14, 2005, ASIC cross-moved for summary judgment, and also requested that summary judgment be denied to the Committee because of ASIC's need for additional discovery.

For the reasons set forth below, summary judgment is granted to the Committee.

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 11 U.S.C. §§ 1334(b) and 157(b)(2)(O) and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

Facts

The following facts are not in dispute. On December 29, 2000, ASIC issued the Insurance Policy to Vanderveer, which was to expire by its terms on December 21, 2001. The Insurance Policy had a liability limit of $1,000,000 per occurrence and $2,000,000 in the aggregate. At the time the Insurance Policy was issued, Vanderveer paid ASIC the premium in advance for the full policy year.

Section IV, subsection 16 of the Insurance Policy provided that "[t]his policy, and all disputes relating to the parties' obligations under this policy, shall be interpreted, construed, governed by and enforced in accordance with the laws of the State of Illinois, except for that body of law known as Conflicts of Law." Accordingly, this Court has interpreted the provisions of the Insurance Policy according to Illinois law.

The Insurance Policy provides Vanderveer with excess insurance. Excess insurance is "coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. A second insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy." Missouri Pacific Railroad v. International Ins. Co., 288 Ill. App. 3d 69, 81, 679 N.E.2d 801 (Ill. App. Ct. 1997).

The Insurance Policy contains a self-insured retention endorsement ("SIR Endorsement") that requires the Debtor to pay the first $25,000 of defense costs, legal fees, and the costs of any settlement or judgment before any coverage will be provided under the policy. The SIR Endorsement states that, in the event of a conflict with any other provisions in the Insurance Policy, the terms of the SIR Endorsement apply. The SIR Endorsement further states that "the

fulfillment of the obligations under this Endorsement is a condition precedent to the performance of [ASIC's] obligations under the policy."

On August 8, 2001, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Insurance Policy was cancelled pursuant to a Notice of Cancellation, effective September 7, 2001, issued by ASIC, and the remaining premium was returned to the Debtor.

Eleven personal injury actions have been commenced alleging injuries occurring on the Debtor's property that would be subject to coverage by the Insurance Policy. Two additional actions are included in ASIC's complaint that appear to result from accidents occurring subsequent to the September 7, 2001 cancellation date. ASIC has appointed counsel to defend all of these personal injury actions. Each of the tort claimants at issue in this case has waived any claims against the estate and has agreed to obtain payment solely from ASIC.

On July 31, 2003, a plan of reorganization (the "Plan") proposed jointly by the Committee and Vanderveer's secured creditor was confirmed. The confirmation order provided for the sale of substantially all of the Debtor's assets to Gateway Sherman, Inc.; however, this Court retained jurisdiction to determine, among other things, whether the Insurance Policy was an executory contract. (Doc. 416, ¶¶8, 23.)[1]

Under the Plan, Class 6 Claims consist of claims against the Debtor covered by any insurance policy. The Plan states that the Committee would "reserve $25,000 per Allowed Insured Claim to pay...for the cost of either the deductible or the self-insured retention required by the insurance policy." (Doc. 416, Ex. A at §3.8.) These amounts have not been paid because

---

[1] "Doc." refers to documents listed on the bankruptcy court's docket, by docket number.

the Committee believes that such payment is not required as a condition to ASIC's obligation to make payment under the Insurance Policy, and would result in ASIC, alone among unsecured creditors, receiving full payment of its unsecured claim – a result contrary to the terms of the Plan and applicable bankruptcy law.

## Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Bankr. P. 7056(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50.

"If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) (citation omitted).  If the movant meets this initial burden, the nonmoving party must set forth specific facts that show triable issues and cannot rely on pleadings containing mere allegations or denials.  Fed. R. Bankr. P. 7056(e); In re Jarrell, 251 B.R. 448, 450-451 (Bankr. S.D.N.Y. 2000), citing Matsushita Elec. Indus, Co., Ltd. v. Zenith

5

Radio Corp., 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed.2d 265 (1986).  The non-moving party must show that there is more than a metaphysical doubt regarding the material fact.  In re Jarrell, 251 B.R. at 450-451 (Bankr. S.D.N.Y. 2000), citing Matsushita, 475 U.S. at 586-587.

Here, the material facts, as outlined above, are not in dispute.

## Discussion

ASIC's declaratory judgment complaint is based on the premise that, as a matter of law, an excess insurance carrier is not required to "drop down" to defend or indemnify a bankrupt insured when the excess insurance coverage is contingent upon payment of a self-insured retention by the insured.  (Doc. 1, Complaint ¶¶34-35, 48.)[2]  ASIC asserts that Vanderveer must exhaust its primary insurance (i.e., the self-insured retentions) before it can reach the excess insurance provided by ASIC.  ASIC contends that the failure of the Debtor to pay the self-insured retention amount is a breach of the Insurance Policy that "now and forever relieves [ASIC] from any obligation to Vanderveer or the other defendants" under the policy.  (Doc. 1, Complaint ¶ 31, 33-37; Doc. 18, ¶2, 24.)

To support this contention, ASIC relies upon Missouri Pacific, 288 Ill. App. 3d at 82, in which an Illinois appellate court held that, under Illinois law, "SIRs constitute primary coverage and thus [an insured] must exhaust the SIRs before looking to the insurers for coverage." Accord Illinois Emcasco Insurance Co. v. Continental Casualty Co., 139 Ill. App. 3d 130, 133, 487 N.E.2d 110 (Ill. App. Ct. 1985). While this general proposition is correct, the insured in Missouri

---

[2] "Complaint" refers to the Verified Complaint for Declaratory Relief, dated March 25, 2004, filed by ASIC, which is incorporated as Exhibit A to the Notice of Removal of State Court Action to Bankruptcy Court, dated April 12, 2004, filed with this Court by the Committee.

Pacific and Illinois Emcasco was not in bankruptcy, and therefore the facts are inapposite and those cases are not controlling here.

ASIC's position in this case is contrary to the Insurance Policy, as well as relevant Illinois state law and bankruptcy law. The Illinois Insurance Code, Chapter 215, §5/388, requires that no liability or indemnity insurance policy may be issued,

> "unless it contains in substance a provision that the insolvency or bankruptcy of the insured shall not release the company from the payment of damages for injuries sustained or death resulting therefrom or loss occasioned during the term of such policy, and stating that in case a certified copy of a judgment against the insured is returned unsatisfied in any action brought by the injured person or his or her personal representative in case death results from the accident because of such insolvency or bankruptcy, then an action may be maintained by the injured person or his or her personal representative against such company under the terms of the policy and subject to all of the conditions thereof for the amount of the judgment in such action not exceeding the amount of the policy."

Ill. Ins. Code, Chapter 215, §5/388.

Section IV, subsection 1, of the Insurance Policy (the "Bankruptcy Clause") complies with this provision of Illinois law, stating, in pertinent part, "[the] bankruptcy or insolvency of the [Debtor] or of the [Debtor's] estate will not relieve [ASIC] of [its] obligations under this [insurance policy]." (Doc. 1; Ex. A, Section IV, ¶ 1). Illinois appellate authority has made it clear that this provision of Illinois law prevents insurers from avoiding indemnity obligations where self-insured retentions have not been paid by a bankrupt insured.

In Home Insurance Co. v. Hooper, 294 Ill. App. 3d 626, 691 N.E.2d 65 (Ill. App. Ct. 1998), cert. denied 178 Ill. 2d 576 (Ill. 1998), a liability insurer sought a declaratory judgment that payment pursuant to a self-insured retention provision in the policy with its bankrupt insured

was a condition precedent to the payment of any claims by the insurer.  There, the self-insured retention provision required the insured to make payment of the first $250,000 of any settlement or judgment against it as a condition precedent to the insurer's obligation to pay damages in excess of the self-insured retention amount.  <u>Id.</u> at 628.

Rejecting the insurer's position, the <u>Home Insurance</u> court held that the insurer was liable for amounts in excess of the $250,000 self-insured retention up to the policy limit.  <u>Id.</u> at 633.  In so holding, the court noted that the operative effect of the self-insured retention provision in the insurance policy was "directly contrary to the public policy as declared by the legislative enactment of section 388."  <u>Id.</u> at 632.  "The plain language of section 388 makes clear the legislative intent to prevent insurers from using the insured's bankrupt condition and resulting inability to make actual payment to satisfy a judgment or any portion thereof as grounds to avoid payment on a policy."  <u>Id.</u>

ASIC makes several arguments in an unavailing attempt to distinguish <u>Home Insurance</u>.  First, ASIC notes that defense costs were not included as a component of the insured's self-insured retention in <u>Home Insurance</u>, and asserts that the inclusion of defense costs in the SIR Endorsement in this case was "a critical factor in the decision to write the policy."  (Doc. 25, p. 3.)

There is nothing in the court's analysis in <u>Home Insurance</u>, however, that suggests that the result in that case would have been different if defense costs had been included within the insurance policy's self-insured retention endorsement.  Neither §5/388, nor any cases interpreting §5/388 or similar statutes in other states, provide support for ASIC's argument that payments for indemnity claims and payments for defense costs should be treated differently.  The public policy

implemented by the statute is that injured parties shall be compensated whether or not a bankrupt debtor pays its self-insured retention. Home Insurance, 294 Ill. App. 3d at 632.

ASIC points to Premcor USA, Inc. v. American Home Assur. Co., 2004 W.L. 1152847 (N.D. Ill. May 21, 2004), aff'd 400 F.3d 523 (7th Cir. 2005), to support its assertion that an excess insurer need not indemnify an insured where defense costs, which are the responsibility of the primary insurer, have not been paid due to the primary insurer's insolvency. In Premcor, the insureds, Premcor USA, Inc. and the Premcor Refining Group, Inc. (collectively, "Premcor"), sued American Home Assurance Company ("AHA") for coverage of litigation defense costs under an umbrella insurance policy. Premcor, 400 F.3d at 524. Premcor's primary insurance carrier, Reliance National Indemnity Company ("Reliance"), became insolvent sometime after the inception of the policy, causing Premcor to accrue litigation costs in defending itself against claims by the estates of two former employees. Id. at 525. Premcor filed an action for declaratory relief and damages, asserting that AHA should indemnify Premcor pursuant to the terms of the AHA policy. Id. The Seventh Circuit held that AHA was not liable to pay defense costs which would have been the obligation of Premcor's primary insurance carrier in the absence of its insolvency. Id. at 530.

ASIC's comparison of the relationship of Vanderveer and ASIC to that of Reliance and AHA misses the point. In Premcor, the insolvent Reliance was the primary insurer, but was not the insured. In this case, Vanderveer is both the primary insurer and the insured. Therefore, §5/388 (which only applies in the case of the insolvency of insureds) was not applicable in Premcor.

ASIC has not identified any case that supports its assertion that an excess insurer need not indemnify a bankrupt debtor that fails to pay defense costs pursuant to a SIR endorsement. To the contrary, case law interpreting §365 of the Bankruptcy Code makes it clear that even in the absence of an applicable statutory provision such as §5/388, the failure of a bankrupt insured to fund a self-insured retention does not relieve the insurer of the obligation to pay claims under the policy. This is so because where (as in this case) an insured debtor has paid the policy premium in full, the insurance policy is not an executory contract for purposes of §365 of the Bankruptcy Code, even where the debtor has continuing obligations, such as the payment of a self-insured retention, a deductible, or a premium. Failure of the debtor to perform these continuing obligations does not excuse the insurer from performance under the contract, but gives rise to an unsecured claim by the insurer for any damages incurred by reason of the debtor's breach of the policy. In short, courts interpreting §365 of the Bankruptcy Code have made it clear that, for purposes of that provision, the debtor's payment of the policy premium constitutes substantial compliance with its contractual obligations.

This question was directly addressed in Eastern Retailers Serv. Corp. v. Argonaut Ins. Co. (In re Ames Dep't Stores, Inc.), 1995 U.S. Dist. LEXIS 6704 (S.D.N.Y. 1995). There, the insurance policy required the insured, Ames, to defend and administer claims within the deductible. Id. at *4. Argonaut, the insurer, commenced an adversary proceeding seeking a declaration that it was not responsible for defense, administration or payment of any personal injury claim where the bankrupt insured refused to pay this deductible. Id. at *2. The court held:

> By failing to defend claims within the $50,000 deductible, Ames may be breaching its contract with Argonaut. But, a post-petition breach of a contract executed pre-petition gives rise only to

10

> pre-petition liability. In re Chateaugay Corp., 87 Bankr. 779, 796 (S.D.N.Y. 1988).  The bankruptcy judge was therefore correct in ruling that Argonaut has at best a pre-petition claim for any defense costs it chooses to expend. There is no doubt that a post-petition breach by a debtor may impose a burden on the other party to the contract because the law allows for compensation only in bankruptcy dollars.  However, Argonaut's attempt to transform the unpleasant consequences it faces as a result of such a post-petition breach into a rewriting of the contract by the bankruptcy court is unavailing...[Further] the failure of the insured to perform those continuing obligations [including funding the defense costs within the self-insured retention] would not excuse the insurer from being required to perform and, consequently, that the Countryman definition of an executory contract would not be satisfied.

Id. at *5, *7.

The court in Argonaut held that any claims an excess insurer may have against a bankrupt insured for the payment of defense costs within the deductible are entitled to full payment only if "(i) they arise under executory contracts that have been assumed under 11 U.S.C. §365; or (ii) they meet the requirements for administrative expense priority under 11 U.S.C. §503(b)."  Id. at *6.

Here, the Insurance Policy is not executory, and certainly has not been assumed by the Debtor, nor has ASIC demonstrated that it meets the requirements for administrative expense priority.  An executory contract in bankruptcy is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Id. at *6, citing Vern Countryman, Executory Contracts in Bankruptcy, Part I, 57 Minn. L. Rev. 439, 460 (1973); Chateaugay, 130 B.R. 162, 164 (S.D.N.Y. 1991).

It is well established that insurance policies for which the policy periods have expired and the premium has been paid are not executory contracts, despite continuing obligations on the part of the insured. Beloit Liquidating Trust v. United Insurance Co., 287 B.R. 904 (N.D. Ill. 2002); Argonaut, 1995 U.S. Dist. LEXIS 6704 at *6-7 (S.D.N.Y. 1995), citing In re Texscan Corp., 976 F.2d 1269, 1271-73 (9th Cir. 1992); In re Sudbury, Inc., 153 B.R. 776, 778-780 (Bankr. N.D. Ohio 1993); In re Firearms Import and Export Corp., 131 B.R. 1009, 1013-14 (Bankr. S.D. Fla. 1991); In re Federal Press Co., 104 B.R. 56 (Bankr. N.D. Ind. 1989). "These courts have reasoned that the failure of the insured to perform those continuing obligations would not excuse the insurer from being required to perform and, consequently, that the Countryman definition of an executory contract would not be satisfied." Argonaut, 1995 U.S. Dist. LEXIS 6704 at *7. Here, it is not disputed the Debtor paid the insurance premium to ASIC in full; therefore, the Insurance Policy is not executory, and has not been (and could not be) assumed by the Debtor.

Thus, like Argonaut, ASIC "has at best a pre-petition claim for any defense costs it chooses to expend." Argonaut, 1995 U.S. Dist. LEXIS 6704 at *5. It would be contrary to fundamental principles of bankruptcy law, which requires the same treatment of creditors having the same priority, to permit the Debtor to pay ASIC, an unsecured creditor, in full. 11 U.S.C. §1123(a)(4) (requiring a plan to "provide the same treatment for each claim or interest of a particular class"). The pool of funds available to pay a pro rata portion of the claims of all unsecured creditors may not be depleted to provide full payment of the claim of a single unsecured creditor. Id.

Should ASIC defend the actions filed against Vanderveer, its claim for amounts expended on defense costs would not qualify for administrative expense priority. "A claim merits

administrative expense treatment under section 503(b) if it (1) arises from a transaction between the creditor and the debtor-in-possession, and (2) is beneficial to the debtor-in-possession in the operation of its business." Argonaut, 1995 U.S. Dist. LEXIS at *9, citing 11 U.S.C. § 503; Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 101 (2d Cir. 1986).  Here, the Insurance Policy was entered into pre-petition; therefore, ASIC's claims do not arise from a transaction between the creditor and the debtor-in-possession.  Argonaut, 1995 U.S. Dist. LEXIS at *9, citing In re Firearms Import and Export Corp., 131 B.R. at 1015-16 (denying administrative expense treatment for insurer's defense costs when debtor failed to fund self-insured retention).  Moreover, the tort claimants in this case waived any claim against the estate as a condition to receiving relief from the automatic stay to pursue their claims in state court.  In addition, the Plan provides that the tort claimants, as Class 6 Insured Claims, "will only be entitled to maintain actions against, and obtain payment solely from an insurance company under an insurance policy or policies issued by such company to or for the benefit of the Debtor."  (Doc. 416, Ex. A at §3.8.)  There would be no benefit to the estate, and no justification under §503, for the Debtor to pay defense costs where any obligation of Vanderveer to the defendants has been waived and discharged.

ASIC advances several other unavailing arguments in opposition to the Committee's summary judgment motion.  ASIC asserts that the Committee is the successor-in-interest to the Debtor by virtue of the Plan, and that the Committee has breached its obligations by failing to pay amounts reserved under the Plan for payment of the Debtor's self-insured retention.  (Doc. 18, ¶ 23-24.)

First, while the Committee is authorized pursuant to the confirmation order to pursue any right, claim, or cause of action on behalf of the Debtor's estate, the Committee is not the successor-in-interest to the Debtor.  Second, the Plan of reorganization states that the Committee, in its capacity as disbursing agent, will "reserve" $25,000 per allowed insured claim to pay any claims for the cost of either the deductible or the self-insured retention required by the insurance policy. (Doc. 416, Ex. A at §3.8.)  ASIC's assertion that this language creates an obligation to pay the self-insured retention is incorrect.  The reserve was created to permit the Plan to be confirmed prior to a judicial determination of this issue and to ensure that, should it be determined that the self-insured retention was required to be paid, the funds would be available to do so.  The reservation of the funds pursuant to the Plan was not a promise to pay.  Neither the language of the Plan nor the confirmation order creates an obligation to pay, and the transcript of the confirmation hearing makes it clear that the parties' intention was to leave the question whether Vanderveer was required, under applicable law, to pay the self-insured retention as a condition to coverage by ASIC, for future judicial determination. (Doc. 548, p. 8:14-9:17.)

ASIC also contends that the Committee's summary judgment motion should be denied pending ASIC's completion of additional discovery.  In its cross-motion for summary judgment, ASIC asserts for the first time that Vanderveer may have breached the representations and warranties it made when it signed the Insurance Policy by failing to report one or more accidents or claims made against the company from December 29, 2000, the inception date of the policy, through April 6, 2001, the date on which ASIC received the executed policy from the Debtor.  ASIC notes that 7 claims allege that accidents did occur between December 1, 2000 and April 6, 2001.  ASIC further alleges that Vanderveer may have entered into the insurance contract with

ASIC knowing that, because of its tenuous financial condition, it would be unlikely to be able to satisfy the self-insured retention obligations imposed by the policy.  These claims were not asserted in ASIC's complaint; thus, ASIC seeks this discovery in aid of potential claims which (depending on the outcome of the discovery) it might seek leave to assert.

ASIC served a subpoena on the Committee on September 22, 2004 in which it requested certain documents relating to these allegations.  The Committee responded that the documents were available for review at their offices; however, the Committee declined to cull through the Debtor's records to identify the specific documents that ASIC had requested.  ASIC asserts the Committee's response was inadequate.  ASIC also asserts it has not been able to serve a subpoena on the insurance broker who represented Vanderveer.

ASIC's request for discovery is governed by Federal Rule of Civil Procedure 56(f), made applicable to these proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, which provides,

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

"A party seeking a Rule 56(f) continuance is generally required to demonstrate due diligence both in pursuing discovery before the summary judgment motion is made and in pursuing the extension of time after the motion is made."  James Moore, et al., Moore's Federal Practice, 56.10 (3d ed. 2005), citing Nicholson v. Doe, 185 F.R.D. 134, 137 (S.D.N.Y. 1999)

(district court denied plaintiff's Rule 56(f) request because plaintiff failed to explain why he could not have requested discovery in more than four months since he discovered identity of witness to be deposed, and time for service of discovery requests had recently expired).

Rule 56(f) requires the party opposing summary judgment who claims to be unable to produce evidence in opposition to the motion to file an affidavit explaining

    1.    the nature of the uncompleted discovery, (i.e., what facts are sought and how they are to be obtained);

    2.    how those facts are reasonably expected to create a genuine issue of material fact;

    3.    what efforts the affiant has made to obtain those facts; and

    4.    why those efforts were unsuccessful.

Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., et al., 769 F.2d 919, 926 (2d Cir., 1985), citing Paul Kadair, Inc. v. Sony Corp. of America, 694 F.2d 1017 (5th Cir. 1980); SEC v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir. 1980) (party seeking discovery pursuant to Rule 56(f) must explain inability to obtain facts and demonstrate how postponement will correct problem; cannot rely on vague assertions regarding nature of facts to be discovered).

ASIC has never filed an affidavit pursuant to Rule 56; rather, it has requested further discovery only in its memorandum in opposition to the defendant's motion for summary judgment. "A memorandum is not a substitute for an affidavit under Rule 56(f)." Burlington, 769 F.2d at 926 (citations omitted). It has been held that the failure to file an affidavit pursuant to Rule 56(f) is by itself enough to reject a claim that the opportunity for discovery was inadequate. Id. (citations omitted).

A court may reject a request for time to conduct further discovery, even if properly and timely made, if it deems the request to be based on speculation concerning the facts sought to be discovered. Mason Tenders Dist. Council Pension Fund, et al. v. Messera, 958 F. Supp 869, 894 (S.D.N.Y. 1997) (citation omitted). A movant must show with some particularity the materials sought and exactly how those materials will help in opposing summary judgment. A bare assertion that the evidence needed is in the hands of the opposing party is insufficient to meet the specificity requirement. Mendoza, et al. v. City of Rome, et al., 70 F. Supp. 2d. 137, 142 (N.D.N.Y. 1999).

Certainly, ASIC's request for further discovery to uncover potential evidence that it has no demonstrable reason to believe exists, to support claims which it has not yet asserted, fails to meet the requirements of Rule 56(f).

Moreover, ASIC has failed to demonstrate due diligence in pursuing discovery related to this matter. ASIC could have sought this discovery pursuant to Bankruptcy Rule 2004 at any time after commencement of the bankruptcy case on August 8, 2001; it did not. Indeed, it was not until September 22, 2004, almost 6 months after this action was removed to this Court, that ASIC served a subpoena on the Committee to produce the documents it now seeks. Moreover, the documents requested were made available to ASIC by the Committee prior to the briefing of this motion. If ASIC was dissatisfied with the Committee's production, it was incumbent upon ASIC to make a motion to compel discovery. It is inappropriate to bring a discovery dispute to the Court's attention for the first time in opposition to a summary judgment motion. Reyes v. Wilson Mem. Hosp., et al., 102 F. Supp. 2d 798, 826 (S.D. Ohio 1998) (Rule 56(f) is not a substitute for the diligent pursuit of discovery), citing Dukes v. Bolden, 1992 U.S. App. LEXIS

5274 (6th Cir. 1992) (unpublished) ("[a]lthough a district court should generally apply Rule 56(f) liberally, the court need not employ the rule to spare litigants from their own lack of diligence.").

Finally, ASIC's cross-motion for summary judgment constitutes an acknowledgment ASIC had sufficient information to justify asking this Court to enter summary judgment in its favor. Courts have found that filing a cross-motion for summary judgment indicates that the moving party was not prejudiced by a lack of discovery. Filiatrault v. Comverse Tech., Inc., 275 F.3d 131, 138 (1st Cir. 2001) ("the making of [a summary judgment motion] almost invariably indicates that the moving party was not prejudiced by a lack of discovery"), citing Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 23 (1st Cir. 1999) ("Ordinarily, a party may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its first effort is unsuccessful.") (citation and internal quotation marks omitted).

## Conclusion

For the foregoing reasons, the Committee's application for summary judgment is granted and ASIC's cross-motion for summary judgment is denied. The Committee is directed to settle an order and a judgment consistent with the foregoing.

Date:  Brooklyn, New York
       July 20, 2005

                                                    *s/Carla E. Craig*
                                                        CARLA E. CRAIG
                                                    United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                          Case No. 01-20348-608

VANDERVEER ESTATES HOLDING, LLC,                                Chapter 11

                            Debtor.
-------------------------------------------------------------x
AMERICAN SAFETY INDEMNITY COMPANY,                              Adv. Proc. No. 04-1202-608

                            Plaintiff,

         -against-

VANDERVEER ESTATES HOLDING, LLC;
VANDERVEER REALTY GROUP, INC.; ASHA
GREENIDGE, as mother of infant JAHNIYA
McLENNAN and ASHA GREENDIDGE,
Individually; ADINA BABB; JAQUELINE
PINEDA; MARIE SOLON; and CHANEL
POITIER, as Administratrix of the Estate of
GERARD POITIER; FOSTER APARTMENT
GROUP, LP and ABRAHAM WEIDER

                            Defendants.
-------------------------------------------------------------x

MAILING CERTIFICATE

        I, Vivian Greene, Judicial Assistant to the Honorable Carla E. Craig, hereby affirm that on July 20, 2005 a copy of an Order was delivered to the parties named below by United States Postal Service first class mail, telecommunication, facsimile or any other delivery method, as follows:

| | |
|---|---|
| Martin Bunin, Esq. | Mark L. Antin, Esq. |
| Peter Marchetti, Esq. | William E. Marsala, Esq. |
| Thelen Reid & Priest | Gennet Kallmann Antin & Robinson PC |
| 875 Third Avenue | 45 Broadway Atrium Litman Suite |
| New York, New York 10022 | New York, New York 10006 |
| Attorneys for the Official Committee | Attorneys for the Plaintiff |
| of Unsecured Creditors | |

Dated: Brooklyn, NY
        July 20, 2005

                                                        *s/Vivian Greene*
                                                           Vivian Greene